# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK ALAN LANE,

     Petitioner,

    v.         CASE NO.  16-3105-JWL

CLAUDE MAYE, Warden,

     Respondent.

## MEMORANDUM AND ORDER

This is a pro se petition for writ of habeas corpus filed under 28 U.S.C. § 2241 by a federal inmate.   Petitioner claims that he was denied due process in prison disciplinary proceedings.[1]  The court issued an Order to Show Cause, respondent filed an Answer and Return (Doc. 8)("A&R"), petitioner filed a Traverse (Doc. 9), and the matter is ready for resolution. The court denies relief because petitioner fails to allege facts showing that the challenged disciplinary proceedings violated the Constitution or laws of the United States.

## Grounds

Petitioner presents two grounds in his petition.   As Ground (1) he claims that the Disciplinary Hearing Officer ("DHO") did not have "some evidence" to find him guilty.  He alleges in support that the DHO could not find petitioner guilty of a Code 203 violation, "Threatening another with Bodily Harm;" the DHO requested that the Incident Report ("IR") be rewritten; and the IR was changed to a Code 204 violation, Extortion/Blackmail.  As Ground (2)

---

[1]  In 2002, Mr. Lane pled guilty in the Southern District of Indiana to conspiracy to launder monetary instruments and conspiracy to possess with intent to distribute methamphetamine and is serving a 360-month sentence.  See *Lane v. Maye*, 2016 WL 3639506 (10th Cir. 2016).  During the challenged disciplinary proceedings, he was serving his sentence at Federal Correctional Institution Schuylkill ("FCI Schuylkill") in Minersville, Pennsylvania.  He is currently confined at the United States Penitentiary in Leavenworth, Kansas.  His projected release date via good conduct time is January 23, 2028.

petitioner claims that the DHO violated *Wolff v. McDonnell* when petitioner was not allowed to call witnesses.  He alleges in support that he was not allowed to speak at his hearing and only allowed to present a written statement, that the DHO was not impartial when he requested that the IR be rewritten, and that he was not allowed to call Warden Perdue and reporting officer Raup as witnesses.[2]  Petitioner did not specify the relief he seeks in his petition but in his Traverse asks the court to vacate the disciplinary findings and restore his good time credits.

## Facts

Respondent and petitioner have provided the administrative record of petitioner's disciplinary proceedings.  The court finds the following uncontroverted facts from the pleadings and exhibits.  On August 31, 2015, petitioner handed his outgoing mail to an officer at Schuylkill-FCI.  This mail included a letter in an envelope addressed to a particular Assistant United States Attorney ("AUSA") in Indianapolis.  The mail ended up at the Special Investigative Services ("SIS") office at Schuylkill-FCI.  Copies of the letter addressed to the AUSA are provided.  Both parties quote the following relevant portions of this letter:

> I like it when Guards say, "IF" you run I will show you how good I can shot (sic). "IF" the warden, and you go past January 25, 2016.  I can't write, what I'm going to do!!!  Fax SIS now, you scumbag. . . .  Somebody will pay for your sins, That (sic) a given. . . .  Don't call Unless you have a Million dollars (sic).  I don't work for free!!!  You tried to play me, and "IF" they take you into trial, it will cost you 2 Million.

A&R, Attachments (Doc. 8-1)("Doc. 8-1")at 61; Petition, Attachments (Doc. 1-1)("Doc. 1-1") at 2.  Later that day, SIS Lieutenant Raup wrote an IR charging petitioner with "Threatening another with bodily harm or any other offense" in violation of BOP Code 203.[3]  Raup reported in

---

[2]     Under the supporting facts for ground (2), petitioner also writes "Mail=Procunier v. Martinez, free speech-mail."  This legalistic phrase contains no facts and no support for a claim under *Wolff*.  Nor is it an adequate statement of a claim under the First Amendment.

[3]     This prohibited act is listed in 28 C.F.R. § 541.3, Table 1-Prohibited acts and available sanctions, under

the IR that the SIS office had received several outgoing letters from Lane and that in his letter to the Indiana AUSA, Lane made the threatening statement, "If the warden and you go past January 25, 2016.  I can't write what I'm going to do???  Fax SIS now, you scumbag."  Later that afternoon, a copy of the IR was delivered to petitioner and the staff investigated the incident. Doc. 1-1 at 5.  On September 3, 2015, the United Disciplinary Committee ("UDC") held a hearing[4] and referred the charge to the DHO.[5]  On September 14, 2015, petitioner appeared before Disciplinary Hearing Officer (DHO) K. Bittenbender at a disciplinary hearing on the threatening bodily harm charge.  During the hearing, the DHO telephoned SIS Lieutenant Raup and requested that the IR be rewritten.  The hearing was stayed.[6]

On September 15, 2015, Raup wrote another Incident Report, No. 2755824, based upon the same August 31st mail incident, but charging petitioner with Extortion in violation of Code

---

"High Severity Level Prohibited Acts" and is defined as: "Threatening another with bodily harm or any other offense."  See also Program Statement P5270.09 (7/8/2011).

[4]        Petitioner appeared and was advised of his rights but did not request a staff representative or witnesses.

[5]        Bureau of Prisons ("BOP") regulations governing the Inmate Discipline Program are codified at 28 CFR § 541.3, et seq.  Section 541.5(b) provides that after an inmate receives an IR, a BOP staff member will investigate it and "specifically inform" the inmate of the charge(s) against him.  Section 541.7 provides that the UDC will review the incident report once the staff investigation is complete.

[6]        The extortion IR explained that "[t]his incident report is being rewritten for further clarification and to support the charge of extortion."  This statement was repeated in the final DHO Report along with the following: "The DHO noted a delay in the discipline process.  This was due to the report being rewritten.  The DHO did not believe this delay infringed upon the inmate's ability to defend himself against the charged behavior."  Doc. 8-1 at 84.  In response to petitioner's administrative appeal, the Regional Director explained as follows:

> The Incident Report was remanded for clarification and to be rewritten.  The Incident Report was rewritten on September 15, 2015, and you were given a copy on that same date.  The UDC reconvened on September 22, 2015.  You were provided with a minimum of 24 hours of notice before your DHO hearing of the charges against you.  There is no indication you were prejudiced in any way by the amendment of the Incident Report.  Policy does not prohibit staff from rewriting Incident Reports in order to provide inmates with accurate prior notice of the allegations against them.

Doc. 1-1 at 28.

204.[7] This IR was delivered to petitioner that day.  Staff investigated the incident and advised petitioner of his rights.  Petitioner indicated that he understood his rights and made no statement during the investigation.  On September 22, 2015, a UDC hearing was held.  Petitioner was present and stated he was "not guilty."  In addition, he presented a written statement to the UDC with his defenses to the charge and claiming due process violations.  Petitioner was given a copy of the BOP document "Rights at the Discipline Hearing" which notified him of his right to a staff representative, and his rights to call witnesses and to present documentary evidence on his behalf.  See Doc. 8-1 at 80.  He signed this document.  He was also given a copy of "Notice of Discipline Hearing Before the (DHO)," which informed him of the same rights.

On September 22, 2015, petitioner again appeared before DHO Bittenbender for hearing on the new IR charging Extortion and was advised of his hearing rights.  Ms. Feger was called as a witness and discussed the meaning of the word "if."   No other witnesses were called. Petitioner stated that he was not guilty and provided a written statement in which he claimed that the rewritten IR and its delayed delivery violated *Wolff v. McDonnell*.  Petitioner did not present documentary evidence.  The DHO found petitioner guilty and imposed sanctions that included loss of Good Conduct Time (27 days) and forfeiture of non-vested Good Conduct Time, as well disciplinary segregation and loss of privileges.  Petitioner was advised of his right to appeal, and the parties agree that he exhausted administrative remedies.  The record includes a copy of the DHO Report dated October 9 2015.  See Doc. 8-1 at 84-86; Doc. 1-1 at 21.  This Report sets forth the specific evidence relied upon by the DHO including "Lane's involvement in the incident" as described in the IR by reporting officer SIS Lieutenant Raup, whom the DHO found

---

[7]        This prohibited act is also listed in 28 C.F.R. § 541.3 under "High Severity Level Prohibited Acts" and is defined as: "Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing."

reason to believe; the "inculpatory evidence" of Lane's typed letter addressed to the AUSA and received by the SIS office; and Lane's statements in that letter. The DHO cited specific parts of the letter and found that "the inmate provide[d] an ultimatum and consequences in his letter directed to the AUSA in a threatening tonality." The DHO also questioned Lane, whom he found neither admitted nor denied the charge but argued he was not guilty of extortion. The DHO concluded that the "greater weight of the evidence/some facts" supported the finding that Lane committed the prohibited act. The DHO also set forth his reasons for the sanctions.

### Standards

To obtain habeas corpus relief, an inmate must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3). A federal prisoner has a constitutionally protected liberty interest in his earned good-conduct time. See *Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987). Therefore, petitioner was entitled to due process at his disciplinary hearing. *Howard v. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007). However, because prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so," the "full panoply of rights due a defendant in (criminal) proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 561 (1974); *Abdulhaseeb v. Ward*, 173 Fed. App'x 658, 661 (10th Cir. 2006). In *Wolff*, the Supreme Court held that in order to satisfy due process in a prison disciplinary proceeding, the inmate must receive: (1) "advance written notice of the claimed violation" no less than 24 hours prior to the hearing; (2) an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;" and (3) a "written statement of the factfinders as to the evidence relied upon and the

reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 563-66; *Abdulhaseeb*, 173 Fed. App'x at 661 (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 455, 454 (1985)); *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990). The Supreme Court subsequently added that when "some evidence" supports the decision to revoke good time credits, the requirements of procedural due process have been met. *Hill*, 472 U.S. at 454; *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996)(review of disciplinary proceeding limited to whether BOP followed three steps mandated by *Wolff* and whether some evidence supported discipline.). "Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56; see *Mitchell*, 80 F.3d at 1445.

## Discussion

The court rejects petitioner's Ground (1) in his petition. As noted, Mr. Lane generally claims that the DHO did not have "some evidence." However, he alleges in support only that the DHO could not find him guilty of Threatening Bodily Harm, the DHO asked Raup to rewrite the IR, and the IR was rewritten. These allegations do nothing to demonstrate that the record was devoid of evidence that petitioner violated Code 204. Petitioner suggests no factual or legal basis for his repeated implication that rewriting the IR was improper and certainly none to show that it violated a federal constitutional right. Furthermore, the court has no difficulty finding that there is some evidence in the record to support the DHO's decision. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Terry v. Jones*, 259 Fed. App'x

85, 86 (10th Cir. 2007), *cert. denied*, 554 U.S. 924 (2008)(quoting *Hill*, 472 U.S. at 456).  A decision to revoke good time credits would only violate due process if the record is "devoid of evidence, providing no support for a disciplinary board's decision." *Id.* (citing *Hill*, 472 U.S. at 457).  The DHO Report cites the reporting officer's statement in the IR as well as Mr. Lane's statements in his letter to the AUSA.  Petitioner has never denied that he wrote this letter.  This court has reviewed petitioner's letter and petitioner's arguments attempting to counter the interpretation of his statements therein by the SIS officer and the DHO.  The court need not weigh this evidence or judge its credibility.[8]  The court finds that the reporting officer's statement in the IR as well as the letter written by Mr. Lane and its contents undoubtedly constitute "some evidence" in the record.

The court rejects petitioner's general claim in Ground (2) that the DHO violated *Wolff v. McDonnell*.[9]  The court also rejects petitioner's supporting allegations under Ground (2) that *Wolff* was violated because petitioner was not allowed to speak at his DHO hearing and only allowed to present a written statement.  Petitioner does not describe any information or argument that he would have presented at his DHO hearing had he spoken or that was not presented in his written Statement to the DHO.  Thus, he fails to show that he could have presented information orally that would have changed the outcome.

The court likewise rejects petitioner's allegations in support of Ground (2) that the DHO was not impartial when he requested that the first IR be rewritten.  Petitioner provides no factual

---

[8]    The Regional Director reasonably found on administrative appeal: "In that letter you made ultimatums and stated if they were not met it would cost one million dollars.  You were using the document as a form of intimidation to threaten/extort a government official."

[9]    The record shows that petitioner was given advance written notice of the extortion charge by delivery of the IR several days prior to the DHO hearing.  He was advised of his procedural rights days before the DHO hearing and given the opportunity to list potential witnesses and to present documentary evidence in his defense.  Finally, he was provided a copy of the DHO's written statement, which set forth the evidence relied upon and the reasons for the disciplinary action and sanctions.

or legal rationale suggesting that this request indicated bias.  Petitioner alleges no other facts to show impartiality in his petition.[10]

The court turns to petitioner's allegations that *Wolff* was violated when he was not allowed to call two witnesses.  As noted in the facts, on the day of petitioner's second UDC hearing, he was given a copy of BOP form "Notice of Discipline Hearing Before the (DHO)."  This form directs the inmate to list the names of witnesses thereon and to "[b]riefly state to what each proposed witness would be able to testify."  The form given to petitioner is checked as "do not" wish to have a staff representative" and "do" wish to have witnesses.  However, Ms. Feger/Education is the only witness listed on the form.  Thus, petitioner did not list SIS Lieutenant Raup or Warden Perdue as witnesses on this form.  Doc. 8-1 at 82.  Petitioner did not sign this document and alleges in his Traverse that he refused to sign the waiver of witnesses line that is handwritten upon this form.[11]  *Id.*  The DHO Report does not mention any request for these two witnesses and does not state that witnesses were denied or provide reasons given for any denial.[12]  The Report contains a form section (C4) that provides "[t]he following

---

[10]      In his Traverse, petitioner claims that DHO Bittenbender was "far from impartial."  In support, he repeats that the DHO had Raup rewrite the first IR.  He then adds that the second IR was not received within 24 hours of staff becoming aware of the incident and the second UDC hearing was not held within 3 to 5 days of issuance of the first IR.  He also argues that the DHO's staying or postponing of the initial hearing was not for one of the purposes allowed in the "rules/regulations," which as the court as noted provides no grounds for federal habeas corpus relief.  These allegations do not show that DHO Bittenbender lacked impartiality, and violations of regulations are not grounds for habeas corpus relief.  Petitioner's closing allegations in his Traverse that the "DHO judge violated every rule/regulation that he could, and played many roles . . . Judge, Jury, executioner (sic)" and that if the court applied "the regulations to what took place," there is "no doubt" the DHO violated petitioner's due process rights under *Wolff* are nothing more than conclusory statements.

[11]      In his Declaration, DHO Bittenbender cites this document and states that on September 22, 2015, petitioner "indicated he did wish to call a staff member from the Education Department."  He also states that petitioner signed this document, but no signature appears on the inmate's signature line.  Doc. 8-1 at 82.  Petitioner did not sign this document.

[12]      Under BOP regulations:

         . . .Witnesses may appear at the DHO's hearing as follows: (1) Witnesses may appear before the DHO either in person or electronically (for example, by video or telephone conferencing) at the

persons requested were not called for the reason(s) given," but no persons are listed or reasons given.  The Report indicates only that petitioner "requested witness(es)" and that Ms. Feger appeared.  Other parts of the record, however, support petitioner's allegation that he requested three witnesses, even though it is not clear that he followed proper procedure.  Petitioner wrote the following in his Statement to the DHO:

> (1)  Witness – Ms. Feger – is a school teacher, and the word "IF" is not a noun (person, place or a thing).  If is the beginning of a prepersial (sic) phrase (?).

> (2)  Witness – R.A. Perdue – Warden, can testify that I have never asked him for 2 million dollars, in exchange, not to Cause Bodily Harm.  I was told by UDC – I could not call executive staff, as a witness – part of the process ("did not write report, did not sit on UDC-Hearing, part of what process?)

> 3) Witness – R. Raup, SIS – can testify that Brad Blackington, AUSA, never asked or sent a "Fax", E-Mail to investigate the offense of Extortion/Code 204. Told could not call as a witness, I asked if a Staff Rep could interview, to ask questions, told No, Staff Rep is only to protect my rights under Wolff v. McDonnell.

Doc. 8-1 at 89; Doc. 1-1 at 19.[13]  Petitioner also claimed in his administrative appeals that he was denied Raup and Perdue as witnesses.  Petitioner argues in his Traverse that he was told Raup and Perdue "was exempt, from DHO-Hearings . . . Executive staff" and that this is not in "the regulations."

---

DHO's discretion. (2) The DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available.  However, the DHO need not call witnesses adverse to you if their testimony is adequately summarized in the incident report or other investigation materials. (3) You or your staff representative may request witnesses appear at the hearing to testify on your behalf. Your requested witnesses may not appear if, in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institution security, or they would present repetitive evidence. (4) If your requested witnesses are unavailable to appear, written statements can be requested by either the DHO or staff representative. . . .

28 C.F.R. § 541.8(f)(1)-(4).

[13]    Petitioner wrote similar requests in his earlier Statement to the UDC.  Doc. 1-1 at 17; Doc. 8-1 at 78.

The court holds that even if petitioner's request for two witnesses was denied without proper reasons or without those reasons being stated on the record, petitioner is not entitled to relief because this error by prison officials was harmless.  In *Wolff*, the Supreme Court held that one of the procedural protections that must be afforded inmates in disciplinary proceedings" is the "right to offer the testimony of witnesses." *Wolff*, 418 U.S. 585 (citing *Wasington v. Texas*, 388 U.S. 14, 19 (1967)).  The Tenth Circuit held in 2006 and has consistently held since that the harmless error analysis applies to the inmate's right to present witnesses:

> No decision of this court has explicitly stated that harmless error review applies to a habeas petition alleging a denial of the right to present witnesses at prison disciplinary hearing.  We have held, in the context of a 42 U.S.C. § 1983 suit, that a prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony "would have affected the outcome of his case."  *Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir.1993).  Every other circuit to consider the precise question before us has applied harmless error review to habeas petitions in similar contexts.  *Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).  See also *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir.1991)("If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely [the result of a prison disciplinary proceeding may properly stand] despite a harmless error in adjudicating the violation").  We join these circuits in concluding that errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review.

*Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 803, 812–13 (10th Cir. 2007); *Jordan v. Wiley*, 411 Fed. App'x 201, 209 (10th Cir. 2011).

Petitioner's own allegations indicate that his requests for Raup and Perdue as witnesses were denied and that he was given reasons, perhaps only orally, for the denial.  Petitioner's allegations are the only descriptions in the record of those reasons.  He does not allege who denied his requests or when they were denied.  The court finds from petitioner's own descriptions in his Statements of the testimony he hoped to elicit from Raup and Perdue, quoted above, show that this testimony was not in any way relevant to the ultimate issue of whether or not petitioner's

statements in his letter to the AUSA violated Code 204.  See *Jordan*, 411 Fed. App'x at 209-10

(Jordan made no showing that the testimony of the requested witnesses was in any way relevant

to the issue of whether or not he made the threatening statement to Officer Quenelle and "[w]e

conclude that any error by the DHO in excluding those witnesses was harmless error on account

of Mr. Jordan's failure to demonstrate the relevance of their testimony.").   Petitioner's

descriptions in his Statements of the testimony he expected from Raup and Warden Perdue do

not include any exculpatory information that if presented at the DHO hearing could conceivably

have changed the outcome.  See *Jordan v. Wiley*, 411 Fed. App'x at 209-10; *Grossman*, 447 F.3d

at 805 (inmate cannot maintain due process claim unless missing evidence would have affected

outcome of case); *Powell v. Addison*, 2014 WL 5147684 (W.D. Okla. 2014).  The Tenth Circuit

in *Grossman* denied the inmate's claim that one or more other witnesses were not called at his

disciplinary hearing after finding, in part, that *Grossman* "does he explain what evidence he was

unable to introduce, making it impossible to review this claim."  See *Grossman*, 447 F.3d at 804

n. 1.   Furthermore, the record reflects that petitioner was given the opportunity to request

witnesses and to show that their testimony would be relevant and was allowed one witness.

Finally, the court notes that petitioner has not properly presented any claims to this court

other than those set forth in his petition.[14]  Petitioner attached many exhibits to his petition,

including his written statements to the UDC and the DHO during proceedings on the initial

charge of Threatening Bodily Harm.  Petitioner was not found guilty of this initial charge, and

---

[14]      The pleading requirements are more demanding for habeas petitions than ordinary civil complaints.  A habeas petitioner must "plead with particularity" rather than simply to give "fair notice."  *Mayle v. Felix*, 545 U.S. 644, 655 (2005)(citing Rule 2 of the Rules Governing Section 2254 Cases, foll. 28 U.S.C. § 2254.)("HC Rule 2). HC Rule 2 provides that "the petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'"  *Id.*  (citing see also Advisory Committee's note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient for the petition is expected to state facts that point to a real possibility of constitutional error.").

any arguments regarding this charge are moot in any event.  Petitioner also attached his statements to the UDC and the DHO during proceedings on the extortion charge.  However, he does not cite these statements in his petition, and the court is not required to parse his exhibits in search of a factual basis for the two general grounds in his petition.  Even if petitioner had properly raised the other claims from these Statements, they would be rejected.  Petitioner claimed the following in his UDC Statement on the extortion charge: the DHO violated "procedures" when he requested that the IR be rewritten; policy was violated in that the Extortion IR was not delivered to petitioner within 24 hours of staff becoming aware of the incident and the second UDC hearing was not held within 3 to 5 days since the IR was rewritten; and the DHO violated "*Wolff v. McDonnell* and *Superintendent v. Hill*" when he requested the rewrite.  The court repeats that allegations that BOP policies or regulations have been violated simply state no claim for federal habeas corpus relief.  Petitioner's references to *Wolff* and *Hill* in his Statement were not supported by any language from those cases, and he did not otherwise explain how the rewriting of his DR violated either.  Conclusory allegations are insufficient to state a claim for relief.  The court reiterates that all claims petitioner may have raised throughout the various steps of the disciplinary process are not now before this court simply by virtue of the fact that petitioner attached portions of the record to his petition.  Petitioner also argues in his Traverse that his being punished for statements in his outgoing mail implicates his First Amendment right to free speech and that the regulation authorizing the punishment must satisfy "the test outlined in *Procunier v. Martinez*."  As previously noted, he did not adequately present a First Amendment claim as a ground for relief in his petition.  Furthermore, this allegation in the Traverse is nothing more than a formulaic recitation.

For all the foregoing reasons, the court concludes that petitioner is not entitled to federal habeas corpus relief.

**IT IS THEREFORE ORDERED** that this petition for writ of habeas corpus is denied.

**IT IS SO ORDERED.**

**Dated this 29th day of August, 2016 at Kansas City Kansas.**

<u>**s/ John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**